IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.

RECEIVED
IN ALEXANDRIA, LA

MAY 11, 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

PREALL GOLSTON,
    Plaintiff

VERSUS

TIM WILKINSON, et al.,
    Defendants

CIVIL ACTION
SECTION "P"
NO. 1:08-CV-00556

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Preall Golston ("Golston") on April 17, 2008 (Doc. 1) and amended on August 14, 2008 (Doc. 11). The named defendants are Tim Wilkinson ("Wilkinson")(warden of Winn Correctional Center ("WCC") in Winnfield, Louisiana), Tim Morgan ("Morgan") (assistant warden of WCC), Pat Thomas ("Thomas") (medical director at WCC), Corrections Corporation of America ("CCA")(the private operator of WCC), Dr. Norman Engelsen, and Winn Correctional Center.[1]

Golston contends that, while he was incarcerated in WCC from December 2007 through June 2008, he developed "severe tooth and gum

---

[1] Angie Martin was also named as a defendant but was dismissed from this action by Golston prior to service of process (Doc. 11).

disease infection" for which he was denied medical care for several months (Doc. 1). Golston states in his original complaint that he had five infected teeth, his requests to make a "medical emergency" were all denied, and he was repeatedly told the dentist was not in. Golston claims he was charged for "dental services" when he requested medical care, even though his requests were denied (Doc. 11). Golston contends he wrote a letter to John D. Ferguson, President of CCA, on March 7, 2008, to inform CCA of his dental care problems, but he did not receive a response (Doc. 11). Golston claims he wrote a letter to Deputy Warden Morgan on March 14, 2008, informing him of his dental problems, but Morgan did not respond (Doc. 11).

Golston alleges that, on March 25, 2008, Pat Thomas refused to allow him to make a medical emergency (Doc. 11). Golston states he showed his teeth to the custody status board and Warden Wilkinson on April 4, 2008, but they did not see that he received medical care (Docs. 1, 11). Golston states his mouth, throat, glands, gums and jaws were swollen and his teeth and gums turned green and black. Golston further alleges he then showed his teeth to LPN Grey Williams during pill call, who immediately told Pat Thomas that Golston needed medical care (Docs. 1, 11). Golston was then seen by the dentist, Dr. Engelsen, who looked at his teeth on March 25, 2008, prescribed antibiotics, and made Golston a dental appointment in one week to pull his three infected teeth (Docs. 1,

2

11). Golston contends that appointment was not kept and his teeth were not pulled until April 25, 2008 and June 13, 2008 (Doc. 11). Golston contends he still has two more teeth that need to be pulled (Doc. 11).

Golston alleges the initial delay in his seeing the dentist was because he had been placed on the backlog list. Golston further alleges that, due to the delay in his dental care, additional teeth became infected and had to be pulled. For relief, Golston asks for a jury trial, medical/dental care, and monetary damages.

Defendants answered the complaint (Docs. 24, 25). Golston filed a motion for summary judgment (Doc. 38). Defendants filed a cross-motion for summary judgment (Doc. 46), to which Golston responded (Docs. 48, 49). The parties' cross-motions are now before the court for disposition.

<u>The Law of Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest

3

upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Stewart v. Murphy</u>, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for

4

trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Denial or Delay of Dental Care

Golston claims defendants denied and delayed his mental care for his infected gums and teeth, resulting in more pain and more teeth becoming infected and having to be pulled. Golston alleges each defendant was aware of his serious medical need for dental care and was deliberately indifferent to it.

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The unnecessary

and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate indifference to the inmates' health or safety. We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291. Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs.

Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

The importance of dental care is undeniable. Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980), cert. den., 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), and cases cited therein. A state's obligation to provide inmates with the basic necessities of life includes the obligation to provide dental care. Cody v. Hillard, 599 F.Supp. 1025, 1048 (S.Dak. 1984), aff'd, 799 F.2d 447 (8th Cir. 1986), cert. den., 485 U.S. 906, 108 S.Ct. 1078 (1988). The refusal of prison officials to provide dental care, or delays in providing it, can constitute deliberate indifference to serious medical needs. Fields v. Gander, 734 F.2d 1313 (8th Cir. 1984). Also, Vasquez v. Dretke, 226 Fed. Appx. 338, 340 (5th Cir. 2007); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995); Kinney v. Kalfus,

25 F.3d 633, 634 (8th Cir. 1994); Patterson v. Pearson, 19 F.3d 439, 440 (8th Cir. 1994); Hunt v. Dental Dept., 865 F.2d 198 (9th Cir. 1989).

Golston shows in his affidavit and statement of undisputed facts that he developed a tooth and gum disease in December 2007, while he was incarcerated in WCC (Doc. 38). Golston further shows in his affidavit that the infection originated in one tooth, but spread to include five teeth and adjacent gums (Doc. 38). Golston states in his affidavit and statement undisputed facts that his first sick call request was submitted on December 12, 2007, but he was never called to the infirmary (Doc. 38). Golston shows in his statement of undisputed facts that he submitted a sick call request on December 21, 2007, and was told it was a duplicate request (Doc. 38). Golston shows in his statement of undisputed facts that he submitted additional sick call requests on December 26 and 27, 2007, explaining that he was in severe pain, to which the response both times was, "Your name is on the list" (Doc. 38). Golston states in his affidavit and statement of undisputed facts that, in his next sick call request on January 3, 2008, he stated he knew he was on the dental waiting list but wanted medication for his severe pain; that sick call request was denied because he had an appointment with the dentist for January 15, 2008 (Doc. 38).

According to Golston's statement of undisputed facts, Dr. Engelsen saw him on January 15, 2008 for a periodic dental

8

examination and did not prescribe medication (Doc. 38). The two medical records for that date show that Dr. Engelsen noted Golston's very poor oral hygiene, severe periodontal disease, heavy calculus, a lesion, highly inflamed gingiva, poor masticating efficiency, that fifteen teeth were already missing, and he needed to have three teeth extracted (Doc. 46, Exs.). Dr. Engelsen ordered him scheduled to have the extractions and the lesion removed on the same day, assigning Golston a dental priority of 3 out of 4 (Doc. 46, Ex.). Contrary to defendants' assertion in their brief (Doc. 46, p. 2), the medical records do not show that Dr. Engelsen prescribed medication for Golston on January 15, 2008 or that any medication was provided on that date.

Golston further states in his affidavit and statement of undisputed facts that on March 25, 2008 he submitted a medical emergency request due to severe pain, which was forwarded by the cell block officers to Pat Thomas, who refused Golston's request for emergency treatment (Doc. 38). Golston states in his affidavit that, after Thomas refused his request, he showed his teeth and gums to LPN Grey Williams when he made afternoon pill call rounds; Williams told Thomas that Golston needed immediate medical care and threatened to have her investigated by the medical malpractice board (Doc. 38). Golston also submitted an affidavit by inmate Lorenzo James, who states he saw Golston show Williams his infected gums (Doc. 38). Golston states in his affidavit that he was taken

to the infirmary that afternoon and seen by the dentist, Dr. Engelsen, who prescribed antibiotics for ten days and ordered that he be scheduled for his teeth extractions (Doc. 38); the medical record shows Golston had "perio abscessed" (Doc. 46, Ex.).

Golston also submitted an affidavit from inmate Robert Jackson, who states that he saw Golston's infected gums on April 1, 2008 (Doc. 38). Golston shows in his own affidavit that he showed his infected teeth and gums to Warden Wilkerson and the custody status board on April 4, 2008 (Doc. 38). Golston submitted an affidavit from inmate Michael Sampson, who states he saw Golston's infected bums on April 25, 2008 (Doc. 38). Golston states in his own affidavit that he had one tooth pulled on April 25, 2008 and two more teeth pulled on June 13, 2008 (Doc. 38). According to his statement of undisputed facts, Assistant Warden Martin helped Golston see Dr. Engelsen on April 25, 2008 (Doc. 38). The dental progress notes of April 25th indicate that Golston had severe periodontal disease ("severe perio") (Doc. 38).

In his response to defendants' motion, Golston argues that, despite all his sick call requests due to severe pain, he was never called to the infirmary and never offered any medication while waiting for his backlogged dental appointment, but was charged for medical services which were not provided on the dates he made sick call requests which were refused (see Doc. 46, Exs.); those charges were reversed after Golston complained about them (Doc. 38).

10

Defendants argue that Golston's dental problems were caused by "his failure to comply with the dentist's advice to improve oral hygiene which resulted in chronic periodontal disease" (Doc. 46, pp. 8-9). That argument does not in anyway excuse a failure to provide medical care, and in fact tends to support the claim of deliberate indifference by the defendants in this case.[2] Whatever the cause, the serious medical needs of inmates must be met by prison officials.

Defendants state, in their statement of undisputed facts, that Golston "consistently received [dental] treatment between July 2006 and June 2008" (Doc. 46). However, routine dental visits in 2006 and early 2007 do not constitute treatment for the serious medical need Golston had in December 2007 through June 2008 for severe periodontal disease. Moreover, defendants allege in their brief (but do not otherwise show) that Golston was told he would be provided free Tylenol for his tooth pain; apparently Tylenol is an inappropriate pain medication for Golston since he alleges that he has hepatitis.[3]

---

[2] This ridiculous argument is akin to excusing prison officials for the death of a diabetic inmate who was not given insulin on the ground that the inmate would not have been diabetic in the first place had he followed a proper diet and exercised daily. Regardless of the cause of the medical problem, it is the duty of prison officials to provide for the serious medical needs of inmates without undue delay.

[3] Taking acetaminiophen can cause liver damage in people with hepatitis. MEDLINEplus Health Information, Medical Encyclopedia: Hepatitis, *available at* http://www.nlm.nih.gov/

Also, although defendants contend in their brief that Dr. Engelsen delayed Golston's extractions because he was trying to save Golston's teeth, the medical records before this court are sparse, do not indicate what Dr. Engelsen was thinking, and do not show that Dr. Engelsen was trying to save Golston's teeth. Moreover, the treatment requested by Golston, to have the teeth extracted, was apparently appropriate since that was the exact treatment eventually given by Dr. Engelsen; if extraction was not appropriate at the time it was initially requested by Golston, then the delay of Golston's medical care evidently caused it to become the appropriate treatment.

Tooth pain and gum disease constituted serious medical needs. The records before this court show that Golston first complained to defendants of tooth pain on December 12, 2007. On January 15, 2008, Golston was examined but not prescribed medication. On March 25, 2008, Golston was prescribed antibiotics but no pain medication, and on April 25, 2008 and June 11, 2008 his teeth were extracted. According to Golston, the infection increased due to the delays in treatment and he was in severe pain from December 2007 through June 2008.

Golston contends both Pat Thomas and Warden Wilkinson were aware he needed dental care because he told Wilkinson and showed

---

medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

him his teeth and because Thomas denied his requests for medical care; neither Thomas nor Wilkinson have refuted those allegations. Golston also contends Assistant Warden Morgan and CCA, through CCA President John Ferguson, were aware he had a serious medical need for dental care because he sent them letters informing them of it; again, defendants have not refuted those allegations. There are no affidavits from the defendants to support their motion for summary judgment.

Finally, Golston contends Dr. Engelsen was deliberately indifferent to his serious medical needs because he failed to provide medication or extract Golston's teeth on January 15, 2008, and failed to extract Golston's teeth on March 25, 2008. However, on January 15th, Engelsen ordered that Golston be scheduled for extractions, and on March 25th, Engelsen prescribed antibiotic to treat Golston's infection prior to extraction; that is not indicative of deliberate indifference to Golston's serious medical needs. Golston's apparent disagreement with Dr. Englesen as to his the timing of his extractions does not state an Eighth Amendment claim for denial of medical care. However, Engelsen has not shown why Golston was not provided pain medication in January or March 2008.

Defendants contend they did not cause Golston's tooth and gum infection, but Golston does not claim they did. Instead, Golston contends their delay in providing medical care caused the infection

to spread unnecessarily, caused the loss of more teeth, and caused unnecessary and prolonged pain and suffering.

Since there are genuine issues of material fact which would preclude a summary judgment, both motions for summary judgment should be denied and this matter set for trial.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that BOTH Golston's and defendants' motions for summary judgment (Docs. 38 & 46) be DENIED.

IT IS FURTHER RECOMMENDED this matter be set for trial.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 11th day of May, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE